IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMH BROADWAY TOWER SENIOR LENDER, LLC, a Delaware limited liability company; IMH BROADWAY TOWER MEZZ LENDER, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM HERTZ, an individual residing in California; ISAAC HERTZ, an individual residing in California; SARAH HERTZ, an individual residing in California,<br><br>Defendants. | No.      1:19-CV-08168 (JSR) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS
<u>THE COMPLAINT</u>**

GIBSON DUNN & CRUTCHER LLP
Matthew K. Kelsey
Jonathan Fortney
200 Park Avenue
New York, New York 10166
(212) 351-4000
mkelsey@gibsondunn.com
jfortney@gibsondunn.com

SNELL & WILMER L.L.P.
Christopher H. Bayley (admitted *pro hac vice*)
James G. Florentine (admitted *pro hac vice*)
One Arizona Center
Phoenix, Arizona 85004
(602) 382-6000
cbayley@swlaw.com
jflorentine@swlaw.com

*Counsel for Plaintiffs*

1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 2

II.     LEGAL STANDARD ............................................................................................. 3

        A.      The Complaint Must Merely Contain Facts Demonstrating That
                Relief is Plausible .................................................................................... 3

        B.      This Court Must Accept All Factual Allegations As True .......................... 4

III.    LEGAL ARGUMENT ............................................................................................ 5

        A.      Plaintiffs' Complaint Properly States a Claim Against Defendants
                for Breach of the Mezz and Tower Guaranties Due to Unpaid
                Tenant/Vendor Liabilities ......................................................................... 5

                1.      As IMH Mezz Lender Stepped Into the Shoes of the Mezz
                        Borrower as the Owner of the Tower Borrower, IMH Mezz
                        Lender is Liable For the Unpaid Vendor/Tenant Liabilities ............. 6

                2.      The Unpaid/Tenant Vendor Liabilities Could Create Liens on
                        the Property ................................................................................... 7

                3.      Whether There Were Sufficient Funds Available from
                        Operations at the Property to Pay the Unpaid Tenant/Vendor
                        Liabilities is an Issue of Fact .......................................................... 8

        B.      Plaintiffs' Complaint Properly States a Claim Against Defendants
                for Waste to the Property Caused By Deferred Maintenance ...................... 8

                1.      The Well-Pled Allegations in Plaintiffs' Complaint State a
                        Claim for Material Waste to the Property ........................................ 9

                2.      Plaintiffs' Complaint Alleges That Waste Occurred Prior to
                        the Receiver's Appointment ........................................................... 12

        C.      Alternatively, this Court Should Grant Plaintiffs Leave to Amend the
                Complaint ............................................................................................... 13

IV.     CONCLUSION ..................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page**

FEDERAL CASES

*2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*,
  96 F.Supp.3d 182 (S.D.N.Y. 2015) ...........................................................................7, 14
*Argonaut P'ship, L.P. v. Bankers Trustee Co. Ltd.*,
  1997 WL 45521 (S.D.N.Y. Feb. 4, 1997) ..................................................................... 12
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................6, 7, 10, 14
*Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*,
  150 F.Supp.3d 345 (S.D.N.Y. Dec. 20, 2015)..................................................6, 7, 10, 14
*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................7, 16
*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) ................................................................................... 16
*Crawford v. Recovery Partners*,
  2014 WL 1695239 (S.D.N.Y. April 28, 2014)............................................................... 16
*Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ............................................................ 16
*Erickson v. Pardus*,
  551 U.S. 89 (2007) ............................................................................................7, 14
*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ..................................................................................... 8
*Harper v. New York City Housing Auth.*,
  673 F.Supp.2d 174 (S.D.N.Y. 2009) ........................................................................... 7
*In re CitiGroup Inc. Bond Litig.*,
  723 F.Supp.2d 568 (S.D.N.Y. 2010) ........................................................................... 7
*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ...............................................................................7, 10, 14
*In re GSE Bonds Antitrust Litig.*,
  2019 WL 4071070 (S.D.N.Y. Aug. 29, 2019) .......................................................7, 14, 15
*In re Keith*,
  2004 WL 2126346 (W.D. Mo. Sept. 10, 2004)............................................................. 10
*Schatzki v. Weiser Capital Mgmt., LLC*,
  2015 WL 6206438 (S.D.N.Y. Oct. 16, 2015) ............................................................... 16
*Smith v. City of New York*,
  2015 WL 3929621 (S.D.N.Y. June 17, 2015)................................................................. 8
*Travelers Inc. Co. v. 633 Third Assocs.*,
  14 F.3d 114 (2d Cir. 1994) ...............................................................................12, 14
*U.S. v. Miller*,
  400 F.Supp. 1080 (S.D.N.Y. 1975)........................................................................12, 13

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*U.S. v. Prousalis*,
   2004 WL 1198495 (S.D.N.Y. June 2, 2004) ................................................................. 11

**STATE CASES**

*300 West Realty Co. v. City of New York*,
   43 A.D.2d 680, 350 N.Y.S.2d 147 (1st Dep't 1973) ............................................... 12, 13
*Watner v. P & C Food Markets, Inc.*,
   138 A.D.2d 959, 526 N.Y.S.2d 292 (App. Div. 4th Dep't 1988) ........................... 14, 15

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 7, 14, 16
Fed. R. Civ. P. 15 ........................................................................................................... 16
Fed. R. Civ. P. 15(a)(2) ................................................................................................. 16
Fed. R. Civ. P. 2(b)(6) ..................................................................................................... 7
Fed. R. Civ. P. 8 ............................................................................................................. 15
Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 8

## I.    INTRODUCTION

Plaintiffs[1] are the owners of an office tower in St. Louis, Missouri, and Plaintiffs have pled in Counts Three[2] and Four[3] of the Complaint that Defendants[4] breached the unambiguous terms of the parties' Loan Documents[5] by failing to pay certain Unpaid Tenant/Vendor Liabilities (Count Three) and by committing waste (Count Four).  Specifically, in Count Three, Plaintiffs allege that Defendants breached the Mezz and Tower Guaranties by failing to pay the Unpaid Tenant/Vendor Liabilities — *i.e.*, over a million dollars of obligations owing to vendors in connection with the Property.[6]  In Count Four, Plaintiffs allege that Defendants materially decreased and impaired the value of the Property by failing to pay for certain immediate and short-term repairs to the Property and by failing to reserve sufficient funds for future repairs.  In Defendants' partial Motion to Dismiss,[7] they do not raise any legal defenses to these claims or dispute the facts underlying them — which of course they cannot do at the pleading stage.  Instead, Defendants attempt to muddy the waters by speculatively and needlessly opining on Plaintiffs' economic motivations and, even

---

[1]    "Plaintiffs" shall collectively mean IMH Broadway Tower Senior Lender, LLC ("IMH Broadway Lender") and IMH Broadway Mezz Lender, LLC ("IMH Mezz Lender").

[2]    "Count Three" refers to the third cause of action in Plaintiffs' Complaint [Dkt. No. 1] (the "Complaint") for breach of the Mezz and Tower Guaranties as a result of the Unpaid Tenant/Vendor Liabilities.

[3]    "Count Four" refers to the fourth cause of action in Plaintiffs' Complaint for waste as a result of the Deferred Maintenance Claims.

[4]    "Defendants" shall collectively mean William Hertz, Isaac Hertz, and Sarah Hertz.

[5]    All capitalized terms not defined herein shall have the same meaning as in Plaintiffs' Complaint. *See* Dkt. No. 1.

[6]    The "Property" refers to that certain real and personal property located at 100 North Broadway Avenue, St. Louis, Missouri 63102.

[7]    The "Motion to Dismiss" refers to that certain "Memorandum of Law in Support of Defendants' Partial Motion to Dismiss the Complaint" Defendants filed on October 7, 2019 [Dkt. No. 24].

worse, by ignoring or misconstruing a number of factual allegations made in Plaintiffs' Complaint. Defendants press this defective approach by impermissibly arguing that this Court should dismiss Counts Three and Four based on little more than their disagreement with Plaintiffs' factual allegations. At base, Defendants merely attempt to heighten the pleading burden or dispute issues of facts—neither of which is appropriate at the motion to dismiss stage. Defendants are on plain notice of Plaintiffs' well-pled and cognizable claims for breach of the Mezz and Tower Guaranties and waste. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.[8]

## II.   LEGAL STANDARD

### A.   The Complaint Must Merely Contain Facts Demonstrating That Relief is Plausible

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted); *see also Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*, 150 F.Supp.3d 345, 354 (S.D.N.Y. Dec. 20, 2015) (recognizing the same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citations omitted). Therefore, as this Court recently explained, "[s]o long as the allegations are plausible, plaintiffs burden has been met; the Court may not choose between two plausible inferences that

---

[8]   Alternatively, to the extent that this Court finds that any allegations in Plaintiffs' Complaint pertaining to Counts Three and Four are lacking (which Plaintiffs deny), Plaintiffs respectfully request that this Court grant leave to amend the Complaint accordingly.

may be drawn from factual allegations at this stage." *In re GSE Bonds Antitrust Litig.*, 2019 WL 4071070, at \*5 (S.D.N.Y. Aug. 29, 2019) (citations and internal quotation marks omitted); *see also Harper v. New York City Housing Auth.*, 673 F.Supp.2d 174, 178 (S.D.N.Y. 2009) (citations and quotation marks omitted) ("The Court's function on a motion to dismiss is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.").

### B.    This Court Must Accept All Factual Allegations As True

The fundamental premise underlying any motion to dismiss is "the assumption that all allegations in the complaint are true[.]" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Once the truth of the factual allegations in the complaint are assumed, the allegations need do no more than "raise a right to relief above the speculative level…." *Id.*; *see also Iqbal*, 550 U.S. at 554 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era[.] . . .); *2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*, 96 F.Supp.3d 182, 198 (S.D.N.Y. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) ("[W]hen ruling on defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  Indeed, this very Court has expressly recognized that "[w]ith respect to those arguments made under Rule 12(b)(6), the Court must draw all reasonable inferences in plaintiff's favor and accept as true all well-pleaded factual allegations in its complaint." *Beazley Ins. Co., Inc.*, 150 F.Supp.3d at 354 (citing *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)); *see also In re CitiGroup Inc. Bond Litig.*, 723 F.Supp.2d 568, 582 (S.D.N.Y. 2010) (explaining that the Court must also "draw[] all reasonable inferences from th[e] facts in favor of the plaintiff.").  Moreover, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550

U.S. at 555; *see also Smith v. City of New York*, 2015 WL 3929621, at *1 (S.D.N.Y. June 17, 2015)

("A complaint need not include detailed factual allegations[.] . . .").

## III.   LEGAL ARGUMENT

### A.   Plaintiffs' Complaint Properly States a Claim Against Defendants for Breach of the Mezz and Tower Guaranties Due to Unpaid Tenant/Vendor Liabilities

Unquestionably, Plaintiffs have sufficiently pled a claim for breach of the Mezz and Tower

Guaranties resulting from the Unpaid Tenant/Vendor Liabilities.  Under New York law, "[t]o make

out a viable claim for breach of a contract a complaint need only allege (1) the existence of an

agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the

defendant, and (4) damages."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,

375 F.3d 168, 177 (2d Cir. 2004) (citation and quotation marks omitted).  Plaintiffs have pled

factual allegations that satisfy each element.  Specifically, as Plaintiffs allege in paragraphs 102

and 103 of their Complaint, the Mezz and Tower Loan Agreements and the Mezz and Tower

Guaranties permit Plaintiffs to pursue Defendants for any loss incurred because of Mezz or Tower

Borrower's or Defendants' "failure to pay charges for labor or materials or other charges or

judgments that can create Liens on any portion of the Property (to the extent sufficient funds from

the operation of the Property are available to do so)."  *See* Tower Loan Agreement at ¶ 9.3(vi); *see*

*also* Mezz Loan Agreement at 9.3(vi) (providing substantially the same).  Plaintiffs also allege that

Defendants are liable for certain unpaid tenant/vendor liabilities — *i.e.*, the Unpaid Tenant/Vendor

Liabilities — and that Plaintiffs have been damaged by Defendants' failure to pay the Unpaid

Tenant/Vendor Liabilities.  *See* Complaint at ¶¶ 104-107.  Plaintiffs thus have furnished a "short

and plain" statement of their claim for breach of the Mezz and Tower Guaranties for the Unpaid

Tenant/Vendor Liabilities in the Complaint — which is all that Fed. R. Civ. P. 8(a)(2) requires.

8

In response, Defendants raise two arguments: (i) that Plaintiffs did not incur any loss as a result of the Unpaid Tenant/Vendor Liabilities and (ii) that Plaintiffs have not alleged that the Unpaid Tenant/Vendor Liabilities could create liens against the Property or that there were sufficient funds available from the operation of the Property to pay such charges.  Neither of Defendants' arguments are sufficient or persuasive.

**1.      As IMH Mezz Lender Stepped Into the Shoes of the Mezz Borrower as the Owner of the Tower Borrower, IMH Mezz Lender is Liable For the Unpaid Vendor/Tenant Liabilities**

Defendants first argue that Plaintiffs have not alleged that they incurred any loss as a result of the Unpaid Tenant/Vendor Liabilities.  Defendants rely on the assumption that Plaintiffs allegedly "bring this action solely as successors to the lenders under the Loan Agreements." *See* Motion to Dismiss at 7.  Defendants apparently either misunderstand and/or misinterpret the facts giving rise to Plaintiffs' claims.

Defendants' argument completely ignores the UCC Sale of the Mezz Collateral.  At the UCC Sale, IMH Mezz Borrower foreclosed upon the Mezz Collateral pursuant to a credit bid of $500,000.  *See* Complaint at ¶ 70.[9]  The Mezz Collateral included, among other things, Mezz Borrower's membership interests in Tower Borrower — *i.e.*, the owner of the Property.  *See* Mezz Pledge Agreement attached as Exhibit 17 to Plaintiffs' Complaint at § 2(i).  Accordingly, IMH Mezz Lender now holds the membership interests in, and owns, Tower Borrower.

As a result of the UCC Sale, IMH Mezz Lender — as owner of the membership interests in Tower Borrower — stands in the shoes of the Mezz Borrower and is directly liable to third parties for the Unpaid Tenant/Vendor Liabilities incurred by the Mezz Borrower and/or Tower

---

[9]      Although Defendants ignore the UCC Sale in arguing that Plaintiffs did not allege that they incurred the Unpaid Vendor/Tenant Liabilities, Defendants expressly recognized the UCC Sale in their Motion to Dismiss at page 4.

Borrower that are currently due and owing in connection with the Property. Defendants' argument that Plaintiffs have not incurred any loss due to the Unpaid Tenant/Vendor Liabilities thus relies on a fundamental misunderstanding of the facts set forth in Plaintiffs' Complaint. Therefore, Defendants' Motion to Dismiss Count Three of Plaintiffs' Complaint fails. *See Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *see also Beazley Ins. Co., Inc.*, 150 F.Supp.3d at 354 (recognizing the same).

### 2.     The Unpaid/Tenant Vendor Liabilities Could Create Liens on the Property

Defendants next contend that Plaintiffs have not alleged that the Unpaid Tenant/Vendor Liabilities could create liens against the Property. Defendants' argument is meritless because Plaintiffs clearly allege the type of unpaid liabilities that could result in liens on the Property. Specifically, in paragraph 85 of the Complaint, Plaintiffs detail six significant unpaid liabilities owing to certain vendors. *See* Complaint at ¶ 85. If the obligations owing to these vendors are not satisfied, the vendors could sue and obtain a judgment for the unpaid obligations. Those judgments could then become a lien on the Property, which is located in St. Louis, Missouri. *See, e.g.*, *In re Keith*, 2004 WL 2126346, at *2 (W.D. Mo. Sept. 10, 2004) ("The judgment lien against the judgment debtor's real property is effective as of the date of the judgment.").

As this Court "must draw all reasonable inferences in plaintiff's favor and accept as true all well-pleaded factual allegations in its complaint," Plaintiffs' detailed allegations regarding the Unpaid Tenant/Vendor Liabilities sufficiently establish that the liabilities could create liens on the Property. *See Beazley Ins. Co., Inc.*, 150 F.Supp.3d at 354 (citing *In re Elevator Antitrust Litig.*, 502 F.3d at 50). For Defendants to argue that Plaintiffs had to recite that the Unpaid Tenant/Vendor Liabilities could create liens on the Property is simply nonsensical where that

conclusion is patently obvious from Plaintiffs' allegations in the Complaint. Defendants' argument thus fails.

### 3. Whether There Were Sufficient Funds Available from Operations at the Property to Pay the Unpaid Tenant/Vendor Liabilities is an Issue of Fact

Additionally, Defendants argue that Count Three of Plaintiffs' Complaint should be dismissed because Plaintiffs have not demonstrated that there were sufficient funds available from the Property's operations to pay the Unpaid Tenant/Vendor Liabilities. As a threshold matter, Plaintiffs have pled the existence of outstanding *unpaid* liabilities at the *foreclosed* Property — the Unpaid Tenant/Vendor Liabilities (Compl. ¶¶ 101-107) — and Defendants do not dispute this. Instead, Defendants attempt to expand Plaintiffs' pleading burden to address what appears to be an attempt by Defendants at raising an affirmative defense. But, whether sufficient funds were available from the Property's operations to satisfy the Unpaid Tenant/Vendor Liabilities is a question of fact. Thus, it is not appropriate for resolution at the motion to dismiss stage. *See, e.g.*, *U.S. v. Prousalis*, 2004 WL 1198495, at *1 (S.D.N.Y. June 2, 2004) (recognizing that "fact questions . . . are inappropriate grounds for a motion to dismiss"). Defendants' argument to the contrary is meritless.

### B. Plaintiffs' Complaint Properly States a Claim Against Defendants for Waste to the Property Caused By Deferred Maintenance

Next, Defendants ignore the well-pled allegations in Plaintiffs' Complaint and request that this Court dismiss Plaintiffs' waste claim. Specifically, Defendants urge this Court to dismiss Plaintiffs' waste claim (*i.e.*, Count Four) because Plaintiff supposedly did not allege (i) that any material waste to the Property occurred or (ii) that Borrower, Guarantor, or Manager committed the waste. The well-pled allegations in Plaintiffs' Complaint belie Defendants' assertions. Thus, this Court should not dismiss Plaintiffs' waste claim.

11

### 1.    The Well-Pled Allegations in Plaintiffs' Complaint State a Claim for Material Waste to the Property

Defendants assert that Plaintiffs' waste claim should be dismissed because Plaintiffs have not alleged any material physical waste to the Property.  To state a claim for waste, Plaintiffs must merely allege facts demonstrating that Mezz Borrower, Tower Borrower, or Defendants (i) allowed the Property to deteriorate and decrease in value or (ii) impaired the mortgage.  *See U.S. v. Miller*, 400 F.Supp. 1080, 1084 (S.D.N.Y. 1975) (citing *300 West Realty Co. v. City of New York*, 43 A.D.2d 680, 350 N.Y.S.2d 147 (1st Dep't 1973)) ("Under New York law, there is a substantive cause of action for waste against one in control of real property who does no more than allow the property to deteriorate and decrease in value[.]"); *Travelers Inc. Co. v. 633 Third Assocs.*, 14 F.3d 114, 120 (2d Cir. 1994) ("New York courts recognize a cause of action for waste by a mortgagee against a mortgagor who impairs the mortgage."); *see also Argonaut P'ship, L.P. v. Bankers Trustee Co. Ltd.*, 1997 WL 45521, at *6 (S.D.N.Y. Feb. 4, 1997) ("New York law permits an action against the protector or trustee of collateral if the secured party claims that the collateral was impaired by the trustees' actions.").

The Second Circuit recognizes that a waste claim may be maintained where a tenant fails to make certain repairs to the property.  *Travelers Ins. Co.*, 14 F.3d at 121 ("Under New York law, an action for waste will lie against a tenant who fails to undertake certain repairs on the property."). In addition, Plaintiffs need not allege any actual physical damage to the Property.  *See id*. ("[P]hysical damage should not be required in an action for waste claiming impairment of the security of a mortgage.").  Here, Plaintiffs unquestionably pled sufficient facts in its Complaint to maintain its waste claim.  Defendants' attempt to argue otherwise disregards the universally recognized elements of a claim for waste, the well-pled allegations in the Complaint, and

impermissibly requests that this Court make an ultimate factual determination at this stage of the case.

a.    Defendants Ignore Plaintiffs' Allegations Regarding Material Waste to the Property

As even a cursory review of Plaintiffs' Complaint demonstrates, Plaintiffs allege sufficient facts to maintain their waste claim.  Simply put, Plaintiffs allege that Defendants' failure to pay the Deferred Maintenance Claims materially impaired the value of the Property.  *See* Complaint at ¶ 111.  Further, Plaintiffs allege that Tower Borrower, Mezz Borrower, and/or Defendants failed to make nearly a million dollars of immediate and short-term repairs, including but not limited to repairs to (i) the HVAC system ($898,023.00) and (ii) the elevator and conveyor system ($68,640.00).  *Id.* at ¶ 88.  Plaintiffs further allege that Defendants failed to maintain replacement reserves in excess of $4.8 million.  *Id.* at ¶ 89.  As stated in the Complaint, the replacement reserves include but are not limited to replacement reserves for (i) the elevator and conveying system ($1,793,568.00), (ii) HVAC system ($1,526,800.00), (iii) roofing ($571,486.00), and (iv) facades ($141,831.00).  *Id.*

Based on the allegations of the need for significant repairs to the Property and the failure to establish replacement reserves for future repairs, Plaintiffs then allege that the Deferred Maintenance Claims "materially decreased and impaired the value of the Property."  *See id.* at ¶ 111.  Nothing more is required for Plaintiffs to present a *prima face* case for waste.  *See Miller*, 400 F.Supp. at 1084 (citing *300 West Realty Co.*, 43 A.D.2d 680, 350 N.Y.S.2d 147) ("Under New York law, there is a substantive cause of action for waste against one in control of real property who does no more than allow the property to deteriorate and decrease in value[.]").  Defendants' attempt to ignore Plaintiffs' allegations and then claim in a conclusory fashion that Plaintiffs have not alleged sufficient facts to maintain their waste claim fails.

13

      b.      <u>Defendants' Disagreement With the Allegations of Deferred Maintenance Claims and Waste Does Not Justify Dismissal of Count Four at This Stage</u>

Defendants' mere disagreement with Plaintiffs' allegations of waste to the Property does not justify dismissal of Count Four under Fed. R. Civ. P. 12(b)(6). *See 2002 Lawrence R. Buchalter Alaska Trust*, 96 F.Supp.3d at 198 (quoting *Erickson*, 551 U.S. at 94) ("[W]hen ruling on defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). In their Motion to Dismiss, Defendants implicitly ask this Court to make inferences in <u>their</u> favor when they conclude that the Deferred Maintenance Claims could not constitute waste to the Property. *See* Motion to Dismiss at 10. It is well-settled, however, that this Court must "must draw all reasonable inferences in plaintiff's favor[.]" *See Beazley Ins. Co., Inc.*, 150 F.Supp.3d at 354 (citing *In re Elevator Antitrust Litig.*, 502 F.3d at 50). Indeed, all that is required is "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted); *see also In re GSE Bonds Antitrust Litig.*, 2019 WL 4071070, at *5 (citations and internal quotation marks omitted) ("So long as the allegations are plausible, plaintiffs burden has been met; the Court may not choose between two plausible inferences that may be drawn from factual allegations at this stage."). Therefore, Defendants' disagreement with whether Plaintiffs' allegations rise to the level of material waste is simply irrelevant at this stage of the case.

Additionally, courts have found that the failure to make repairs to real property can constitute waste under New York law. *See Travelers Ins. Co.*, 14 F.3d at 121 ("Under New York law, an action for waste will lie against a tenant who fails to undertake certain repairs on the property."); *Watner v. P & C Food Markets, Inc.*, 138 A.D.2d 959, 959, 526 N.Y.S.2d 292, 293 (App. Div. 4th Dep't 1988) ("A tenant has an implied obligation to refrain from affirmative acts of

waste and to make 'tenantable' repairs to avoid permissive waste of the leasehold[.]").  Viewed in the light most-favorable to Plaintiffs, Plaintiffs' allegations of significant immediate and short-term repairs and Defendants' failure to maintain replacement reserves are thus more than sufficient to state a claim for waste.

### 2.    Plaintiffs' Complaint Alleges That Waste Occurred Prior to the Receiver's Appointment

Last, Defendants — once again — ignore the well-pled factual allegations in Plaintiffs' Complaint and summarily conclude that Plaintiffs have not alleged waste "by the Borrower, Guarantor, or Manager."  *See* Motion to Dismiss at 11.

Defendants ignore, however, that Plaintiffs, as stated in the Complaint, first discovered the existence of the Deferred Maintenance Claims in May of 2017 — *i.e.*, long before the Receiver took control of the Property.  *See* Complaint at ¶ 87.  Indeed, Plaintiffs alleged in their Complaint "that significant capital improvements that were scheduled to be completed per the property condition assessment **dated May 2017** were deferred by the Tower Borrower, Mezz Borrower, and/or Defendants and never completed (the "Deferred Maintenance Claims")."  *See id*. (emphasis added).  Clearly Plaintiffs' Deferred Maintenance Claims relate to waste that occurred prior to the Receiver's exercise of control over the Property.  Thus, Plaintiffs have more than met their burden under Fed. R. Civ. P. 8 to plead facts demonstrating that their waste claim is directly applicable to Defendants.  *See In re GSE Bonds Antitrust Litig.*, 2019 WL 4071070, at *5 (citations and internal quotation marks omitted) ("So long as the allegations are plausible, plaintiffs burden has been met; the Court may not choose between two plausible inferences that may be drawn from factual allegations at this stage.").

15

### C.   Alternatively, this Court Should Grant Plaintiffs Leave to Amend the Complaint

To the extent that this Court finds that there is any defect in Plaintiffs' Complaint (which there is not), this Court should grant Plaintiffs leave to amend the Complaint. Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Accordingly, courts in this district routinely grant leave to amend under Fed. R. Civ. P. 15's liberal standard. *See Schatzki v. Weiser Capital Mgmt., LLC*, 2015 WL 6206438, at \*1 (S.D.N.Y. Oct. 16, 2015) ("Rule 15 sets out a liberal standard, instructing that leave to amend should be freely granted."); *Crawford v. Recovery Partners*, 2014 WL 1695239, at \*1 (S.D.N.Y. April 28, 2014) ("The standard governing motions to amend is a permissive one that is informed by a strong preference for resolving disputes on the merits.") (citations and internal quotation marks omitted). Specifically, courts permit leave to amend unless the proposed amendment would be futile, the opposing party would be prejudiced, or a party seeks leave to amend in bad faith. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile.").

Here, Defendants' arguments for dismissal of Plaintiffs' Complaint center on alleged lack of minute factual allegations despite the fact that the Supreme Court has explained that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. In other words, Defendants have not made any showing that there is a legal bar to any aspect of Plaintiffs' Complaint that would make amendment futile. Accordingly, to the extent that this Court finds (which it should not) that there is any defect in

Plaintiffs' Complaint, Plaintiffs respectfully request that this Court grant Plaintiffs leave to amend the Complaint.

## IV.    CONCLUSION

In summary, Plaintiffs' Complaint is more than sufficient to state a claim for breach of the Mezz and Tower Guaranties as a result of the Unpaid Tenant/Vendor Liabilities and waste. Defendants' attempts to argue otherwise border dangerously on wasting this Court's time and resources as they are unpersuasive and ultimately meritless.  Initial disclosures have been made and discovery has begun in this case.  Defendants cannot argue with a straight face that they do not understand the claims against them in Counts Three and Four.  As such, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss and direct that the Defendants file an answer to the Complaint without further delay.

Dated: Phoenix, Arizona
          October 25, 2019

SNELL & WILMER L.L.P.

By:    *Christopher H. Bayley*
Christopher H. Bayley (admitted *pro hac vice*)
James G. Florentine (admitted *pro hac vice*)
One Arizona Center
Phoenix, Arizona 85004
(602) 382-6000
cbayley@swlaw.com
jflorentine@swlaw.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Matthew K. Kelsey
Jonathan Fortney
200 Park Avenue
New York, New York 10166
(212) 351-4000
mkelsey@gibsondunn.com
jfortney@gibsondunn.com