IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMH BROADWAY TOWER SENIOR LENDER, LLC, a Delaware limited liability company; IMH BROADWAY TOWER MEZZ LENDER, LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br><br>  v.<br><br>WILLIAM HERTZ, an individual residing in California; ISAAC HERTZ, an individual residing in California; SARAH HERTZ, an individual residing in California,<br><br>        Defendants.<br><br>WILLIAM HERTZ, an individual residing in California; ISAAC HERTZ, an individual residing in California; SARAH HERTZ, an individual residing in California,<br><br>        Counterclaim Plaintiffs,<br><br>  v.<br><br>IMH BROADWAY TOWER SENIOR LENDER, LLC, a Delaware limited liability company; IMH BROADWAY TOWER MEZZ LENDER, LLC, a Delaware limited liability company,<br><br>        Counterclaim Defendants. | No. 1:19-CV-08168 (JSR) |

**REPLY IN SUPPORT OF LENDERS' MOTION TO DISMISS
<u>GUARANTORS' COUNTERCLAIMS</u>**

| | |
|---|---|
| GIBSON DUNN & CRUTCHER LLP | SNELL & WILMER L.L.P. |
| Matthew K. Kelsey | Christopher H. Bayley (admitted *pro hac vice*) |
| Jonathan Fortney | James G. Florentine (admitted *pro hac vice*) |
| 200 Park Avenue | One Arizona Center |
| New York, New York 10166 | Phoenix, Arizona 85004 |
| (212) 351-4000 | (602) 382-6000 |
| mkelsey@gibsondunn.com | cbayley@swlaw.com |
| jfortney@gibsondunn.com | jflorentine@swlaw.com |

*Counsel for Plaintiffs/Counter-Defendants*

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT .................................................................................................. 1

II. GOVERNING LEGAL STANDARD ........................................................................................ 2

III. LEGAL ARGUMENT ................................................................................................................ 2

    A. Guarantors' Unjust Enrichment Claim Must Be Dismissed .................................. 2

        1. Guarantors and Lenders' Respective Relationships Are Governed Exclusively by the Guaranties ................................................................... 2

        2. Guarantors Are Not Entitled to a Money Judgment Against Lenders On Their Unjust Enrichment Claim ............................................. 3

        3. Guarantors Fail to State an Unjust Enrichment Claim Relating to the UCC Sale ............................................................................................ 3

            a. Guarantors Fail to Allege That They Conferred Any Benefit on Lenders .................................................................... 3

            b. Guarantors Fail to Plead Any Facts Supporting Their Speculative Assumption that IMH Tower Lender Participated in the UCC Sale ...................................................... 4

        4. Guarantors Fail to, and Cannot, Allege Any Unjust Enrichment from Tower Borrower's Alleged Failure to Remit Rents to Lenders ........ 6

            a. Guarantors Admit that They Failed to Plead that Lenders Received a Benefit When Tower Borrower Allegedly Failed to Remit Rents to Lenders ..................................................... 6

            b. Guarantors Waived Any Argument that Lenders Are Required to Collect from Tower Borrower Prior to Enforcing Their Rights Under the Guaranties ............................... 6

    B. Guarantors' Commercially Unreasonable Foreclosure Claim Fails as a Matter of Law and Must Be Dismissed ................................................................... 7

        1. Guarantors Fail to State a Claim Against IMH Tower Lender for a Commercially Unreasonable Foreclosure .................................................. 7

        2. Guarantors Are Not Entitled to a Money Judgment on Their Commercially Unreasonable Foreclosure Claim ....................................... 7

        3. Guarantors Fail to Allege that the UCC Sale Was Commercially Unreasonable Under the Pledge Agreement .............................................. 8

            a. The Pledge Agreement Sets Forth the Requirements of a Commercially Reasonable Foreclosure ......................................... 8

|   |   | b. | IMH Mezz Lender Provided Guarantors (and Others) Notice of the UCC Sale as Required Under the Pledge Agreement ................................................................................... 8 |
|---|---|---|---|
|   |   | c. | Section 10(d)(ii) of the Pledge Agreement Does Not Incorporate All of New York's UCC's Requirements for a Commercially Reasonable Foreclosure ......................................... 9 |
| IV. | CONCLUSION ............................................................................................................ 10 |

## TABLE OF AUTHORITIES

Page(s)

Cases

*Chemical Bank v. Haseotes*,
   1994 WL 30475 (S.D.N.Y. Feb. 1, 1994) .............................................................................. 7
*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 1992) ................................................................................................ 10
*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   907 N.E.2d 268, 879 N.Y.S.2d 355 (2009) .......................................................................... 2
*In re Stedman*,
   264 B.R. 298 (Bankr. W.D.N.Y. 2011) ............................................................................ 7, 8
*Leigh Co. v. Bank of N.Y.*, 617 F. Supp. 147, 153. (S.D.N.Y. 1985) .......................................... 10
*New York City Health & Hosps. Corp. v. Wellcare of New York, Inc.*,
   937 N.Y.S.2d 540 (N.Y. Sup. Ct. 2011) .............................................................................. 3
*Regnante v. Secs. & Exchange Officials*,
   134 F. Supp. 3d 749 (S.D.N.Y. 2015) .................................................................................. 6

Statutes

NY UCC § 9-603 .......................................................................................................................... 8
NY UCC § 9-611 .......................................................................................................................... 9

4850-3489-1695

## I. PRELIMINARY STATEMENT

In an attempt to advance their unfounded narrative that Lenders[1] are impermissibly opportunistic, Guarantors assert their objectively baseless Counterclaims. First, Guarantors claim that Lenders have been unjustly enriched as a result of the UCC Sale and Tower Borrower's alleged failure to remit rents to Lenders. Guarantors' unjust enrichment claim fails as a matter of law and must be dismissed at the initial pleading stage because (i) Guarantors and Lenders' respective relationships are exclusively governed by the Guaranties, thus precluding Guarantors from availing themselves of the equitable claim of unjust enrichment, which is a remedy for parties whose relationship is not governed by a contract, (ii) Guarantors fail to allege that they conferred any benefit on Lenders, which New York law unambiguously requires to properly plead a claim for unjust enrichment, and (iii) Guarantors fail to allege that Lenders actually received a benefit from Tower Borrower's alleged failure to remit rents to Lenders, which is also required by New York law to properly plead a claim for unjust enrichment.

Second, Guarantors allege that the UCC Sale was commercially unreasonable in violation of New York's Uniform Commercial Code (the "UCC"). Guarantors' commercially unreasonable foreclosure claim is equally baseless because, among other things, Guarantors (i) fail to plead (or argue in their Response[2]) any facts that IMH Tower Lender conducted or participated in the UCC Sale, (ii) cannot receive a money judgment on their claim, yet such a judgment is the only relief Guarantors requested, and (iii) fail to adequately plead that IMH Mezz Lender did not comply with the Pledge Agreement's[3] requirement for a commercially reasonable foreclosure when it

---

[1]   All capitalized terms not defined herein shall have the same meaning as in Lenders "Memorandum of Law in Support of Motion to Dismiss Guarantors' Counterclaims" filed on December 3, 2019 at Dkt. No. 37 ("Motion to Dismiss").

[2]   The "Response" refers to the "Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss the Counterclaims" filed on December 13, 2019 at Dkt. No. 39.

[3]   The Pledge Agreement is attached as Exhibit 17 to "Plaintiffs' First Amended Complaint" filed on November 22, 2019 at Dkt. No. 31.

1

conducted the UCC Sale.  Accordingly, Lenders respectfully request that this Court dismiss the Counterclaims with prejudice.

## II.     LEGAL ARGUMENT

### A.     Guarantors' Unjust Enrichment Claim Must Be Dismissed

#### 1.     Guarantors and Lenders' Respective Relationships Are Governed Exclusively by the Guaranties

Guarantors' unjust enrichment claim fails in the first instance because Guarantors and Lenders' respective relationships are governed exclusively by the Tower and Mezz Guaranties. As Lenders explained in the Motion to Dismiss, "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274, 879 N.Y.S.2d 355, 361 (2009) (citations omitted)).  Guarantors do not dispute this rule of law.  *See* Response at 17.  Instead, Guarantors argue in a conclusory fashion that the Guaranties do not govern the specific activity alleged in the Counterclaims — *i.e.*, the UCC Sale.

Guarantors and Lenders respective relationships regarding the Loans and the Property, including the UCC Sale of the Mezz Collateral, are exclusively governed by the Tower and Mezz Guaranties.  *See* Tower Guaranty; Mezz Guaranty.  By way of example, with respect to the UCC Sale of the Mezz Collateral, "Guarantor[s] agree[d] to the provisions of the Loan Documents," which includes, by definition, the Pledge Agreement, when they executed the Mezz Guaranty. *See* Mezz Guaranty at ¶ 1.7, p. 1 (defining "Loan Documents" to include, among other things, the Pledge Agreement).  Accordingly, all of Guarantors' allegations regarding the alleged impropriety of the UCC Sale are thus subject to, and governed by the Mezz Guaranty, pursuant to which Guarantors expressly agreed to the provisions of the Pledge Agreement.  *See id.*  Guarantors thus cannot maintain their unjust enrichment claim and it must be dismissed.

#### 2.     Guarantors Are Not Entitled to a Money Judgment Against Lenders

2

Guarantors' unjust enrichment claim, at its essence, is an affirmative defense. Indeed, Guarantors' overarching complaint and basis for their claim of damages is that Lenders' alleged actions (or non-actions) improperly increased the amounts owing under the Loans and Guaranties. Despite this, Guarantors' sole relief requested is a money judgment against Lenders. *See* Counterclaims at ¶ 79. Contrary to Guarantors' requests, if they are successful on their Counterclaims, Guarantors — at best — would be entitled to a finding that they do not owe any amounts to Lenders under the Guaranties. Under no scenario, however, would Guarantors be entitled to a money judgment against Lenders. Accordingly, this Court should thus dismiss Guarantors' unjust enrichment claim.

### 3. Guarantors Fail to State an Unjust Enrichment Claim Relating to the UCC Sale

#### a. Guarantors Do Not Allege That They Conferred Any Benefit on Lenders

In the Motion to Dismiss, Lenders, citing to (among other cases) *New York City Health & Hosps. Corp. v. Wellcare of New York, Inc.*, 937 N.Y.S.2d 540, 543 (N.Y. Sup. Ct. 2011), explained that Guarantors must allege that they conferred a benefit on each of the Lenders. *See* Motion to Dismiss at 13-14. Ignoring *New York City Health & Hosps. Corp.*, Guarantors accuse Lenders of misstating the law. *See* Response at 19. Guarantors, however, cannot ignore controlling authority because it is detrimental to their case.

In *New York City Health & Hosps. Corp.*, the New York Supreme Court clearly and unambiguously explained that "[t]o state a cause of action for unjust enrichment, **a plaintiff must allege that it conferred a benefit upon the defendant**...." 937 N.Y.S.2d at 543 (emphasis added) (citations omitted). Guarantors make no attempt to distinguish *New York City Health & Hosps. Corp.* and other similar controlling authority. In the Counterclaims, Guarantors indisputably fail to plead that they conferred any benefit on Lenders. *See* Response at 19-20. Although Guarantors refuse to acknowledge such authority, New York law is clear that, to plead and prove a viable

3

unjust enrichment claim, the claimant must show that it conferred a benefit on the defendant. Accordingly, Guarantors' unjust enrichment must be dismissed.

        b.      <u>Guarantors Fail to Plead Any Facts Supporting Their Speculative Assumption that IMH Tower Lender Participated in the UCC Sale</u>

Despite their contentions to the contrary, Guarantors fail to allege any actual facts in the Counterclaims demonstrating that IMH Tower Lender conducted, participated in, or was otherwise involved in the UCC Sale. Instead, Guarantors attempt to salvage their claims against IMH Tower Lender by arguing that "Lenders conducted the commercially unreasonable foreclosure pursuant to a concerted plan involving multiple IMH entities and affiliates, including IMH Tower Lender." *See* Response at 13. Guarantors avow that paragraphs 4 through 7, 23 through 30, and 47 and 48 of the Counterclaims provide the basis for their assertion that they have stated an unjust enrichment claim against IMH Tower Lender. *See* Response at 13-15, 24.

A review of the aforementioned paragraphs of the Counterclaims, however, demonstrates that Guarantors completely fail to allege that IMH Tower Lender participated in or conducted the UCC Sale. Specifically, in paragraph 4 of the Counterclaims, Guarantors allege that "[Lenders] were able to acquire the Mezz Collateral...." *See* Counterclaims at ¶ 4. This assertion is implausible because Guarantors' own allegations demonstrate that IMH Mezz Lender, not IMH Tower Lender, acquired the Mezz Collateral. *See, e.g., id*. at ¶ 67 (alleging that **IMH Mezz Lender** structured a commercially unreasonable sale process . . . thereby ensuring **IMH Mezz Lender** would acquire the Mezz Collateral....") (emphasis added). Paragraph 5 of the Counterclaims merely alleges Lenders' alleged valuation of the Property. *See id.* at ¶ 5. Moreover, paragraph 6 states in a conclusory manner that the UCC Sale was allegedly commercially unreasonable in violation of Article 9 of the UCC Sale. *See id.* at ¶ 6. In other words, paragraph 6 of the Counterclaims states a legal conclusion, not a factual allegation. *See id.* Furthermore, paragraph 7 of the Counterclaims, once again, alleges that both Lenders acquired the Mezz Collateral despite Guarantors' own contradictory allegations. *See id.* at ¶ 7. In sum, paragraphs 4

4

through 7 of the Counterclaims do not contain any actual facts demonstrating that IMH Tower Lender conducted or participated in the UCC Sale.

Similarly, Guarantors fail to allege that IMH Tower Lender conducted or participated in the UCC Sale, or even that IMH Tower Lender was part of any alleged scheme to conduct a commercially unreasonable foreclosure, in paragraphs 23 through 30 of the Counterclaims. Stripped of Guarantors' conclusory speculation, paragraphs 23 through 30 merely allege that IMH Tower Lender negotiated and ultimately acquired the Tower Loan and all of the related rights under the Tower Loan Documents from Wells Fargo Bank, National Association, as trustee for the benefit of the registered holders of JP Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass Through Certificates, Series 2014-FL6 ("WF Lender"). *See* Counterclaims at ¶¶ 23-25. As part of IMH Tower Lender's acquisition of the Tower Loan, IMH Tower Lender obtained financing from JP Morgan. *See id.* at ¶¶ 27-30. Clearly, paragraphs 23 through 30 of the Counterclaims cannot support Guarantors' assertion that they can state any claim related to the UCC Sale against IMH Tower Lender.

Finally, Guarantors rely on IMH Financial Corporation's ("IMHFC") Second Quarter 2019 Form 10-Q filed with the SEC ("Initial SEC Filing") as alleged evidence that IMH Tower Lender conducted or participated in the Counterclaims. *See* Response at 14-15; Counterclaims at in ¶¶ 47-48. Guarantors argue that IMHFC's statements, made on behalf of itself and its subsidiaries, that (i) "we foreclosed on the mezzanine loan" and (ii) "[i]n a related transaction, a subsidiary of the Company purchased the $13.2 million first mortgage note secured by [the Property]" make Guarantors' claim against IMH Tower Lender plausible. *See id.* at 14-15. It is pure speculation, however, that IMHFC's use of the word "we" is any indication that IMH Tower Lender was involved in the UCC Sale. In fact, IMHFC reported the Initial SEC Filing on a consolidated basis. *See* Initial SEC Filing[4] at F-11 (stating that the Initial SEC Filing was reported on a consolidated

---

[4] The Initial SEC Filing is attached as Exhibit 1 to the "Declaration of Israel Dahan In Support of Defendants' Memorandum of Law in Support of Their Motion for Judgment on the Pleadings" filed on December 3, 2019 at Dkt. No. 38.

basis). Therefore, IMHFC's use of the word "we" in the Initial SEC Filing is simply a result of the basis upon which IMHFC reported the Initial SEC Filing and certainly not any indication that IMH Tower Lender participated in the UCC Sale. In addition, once again, the "related transaction" that the Initial SEC Filing mentions is simply IMH Tower Lender's acquisition of the Tower Loan and related Tower Loan Documents from WF Lender. In sum, Guarantors' unjust enrichment claim against IMH Tower Lender for its alleged involvement in the UCC Sale is based on nothing more than speculation. As such, the claim fails and must be dismissed.

### 4. Guarantors Fail to, and Cannot, Allege Any Unjust Enrichment from Tower Borrower's Alleged Failure to Remit Rents to Lenders

#### a. Guarantors Admit that They Failed to Plead that Lenders Received a Benefit When Tower Borrower Allegedly Failed to Remit Rents

Under New York law, Guarantors must allege that Lenders "actually received a benefit" to state a claim for unjust enrichment. *Regnante v. Secs. & Exchange Officials*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015) ("Notably, in order to state an unjust enrichment claim, a plaintiff must show that the defendant actually received a benefit.") (citations omitted). Even a cursory review of Guarantors' Counterclaims demonstrates, however, that Guarantors allege the exact opposite—*i.e.*, that Lenders did **not** receive a benefit when Tower Borrower allegedly failed to remit rents to Lenders. *See* Counterclaims at ¶ 77. Therefore, Guarantors' unjust enrichment claims fails.

#### b. Guarantors Waived Any Argument that Lenders Are Required to Collect from Tower Borrower

In addition, Guarantors' unjust enrichment claim must be dismissed because Guarantors waived any argument pursuant to Section 1.6 or 2.13 of the Tower and Mezz Guaranties that Lenders must seek to collect from Tower Lender (or any other entity or person) prior to enforcing their rights against Guarantors under the Guaranties. In an effort to avoid the clear import of these contractual provisions, Guarantors misconstrue the nuance of Lenders' argument. Lenders' argument is not that Sections 1.6 or 2.13 of the Tower and Mezz Guaranties bar Guarantors' affirmative claims against Lenders, as Guarantors mistakenly believe. Rather, it is that Sections 1.6 and 2.13 of the Guaranties foreclose any argument that Lenders must seek to collect from

Tower Borrower (or anyone else) prior to enforcing their rights against the Guarantors under the Guaranties. Clearly, Guarantors' unjust enrichment claim relating to Lenders' alleged failure to collect rents from Tower Borrower post-UCC Sale relies entirely on the assertion that Lenders are obligated to seek to collect from Tower Borrower. *See* Counterclaims at ¶ 77. Sections 1.6 and 2.13 of the Guaranties, however, bar any such argument. As a matter of law, Guarantors thus cannot maintain their claim for unjust enrichment.

### B. Guarantors' Commercially Unreasonable Foreclosure Claim Fails as a Matter of Law and Must Be Dismissed

#### 1. Guarantors Fail to State a Claim Against IMH Tower Lender for a Commercially Unreasonable Foreclosure

As discussed above in Section III(A)(3)(b), Guarantors fail to plead any facts demonstrating that IMH Tower Lender conducted or otherwise participated in the UCC Sale. *See supra* at Section at III(A)(3)(b). Therefore, Guarantors' commercially unreasonable foreclosure claim as against IMH Tower Lender must be dismissed.

#### 2. Guarantors Are Not Entitled to a Money Judgment on Their Commercially Unreasonable Foreclosure Claim

Next, Guarantors contend that they are entitled to a money judgment against Lenders on their commercially unreasonable foreclosure claim. Guarantors argue that Lenders' reliance on *Chemical Bank v. Haseotes*, 1994 WL 30475, at * 3 (S.D.N.Y. Feb. 1, 1994) and *In re Stedman*, 264 B.R. 298 (Bankr. W.D.N.Y. 2011) is unpersuasive because those cases hold that a commercially unreasonable sale does not preclude a deficiency judgment. *See* Response at 12-13. Further, Guarantors assert that *Chemical Bank* and *In re Stedman* are inapplicable because Guarantors bring their commercially unreasonable foreclosure claim as an affirmative claim for relief, not a defense to the deficiency owing under the Guaranties. *See* Response at 12-13.

Guarantors' argument fails because Guarantors cannot increase their alleged rights merely by pleading an affirmative defense as an affirmative claim for relief. Guarantors' commercially unreasonable foreclosure claim is nothing more than a disguised affirmative defense to Lenders' claims for a deficiency owing under the Mezz Guaranty and the balance owing under the Tower

Guaranty.  Thus, *Chemical Bank* and *In re Stedman* are on point.  Indeed, if Guarantors prevailed on their misguided theory that the UCC Sale was commercially unreasonable, Guarantors, at best, would be entitled to a finding that they do not owe any amounts under the Guaranties.  Put differently, because Guarantors cannot allege any damages other than that the amount they owe under the Guaranties allegedly increased, Guarantors cannot be entitled to a money judgment against Lenders.  As Guarantors cannot obtain a money judgment even if they are successful, this Court should dismiss Guarantors' commercially unreasonable foreclosure claim and permit Guarantors to pursue that "claim" for what it actually is:  an affirmative defense.

### 3. Guarantors Fail to Allege that the UCC Sale Was Commercially Unreasonable Under the Pledge Agreement

#### a. The Pledge Agreement[5] Sets Forth the Requirements of a Commercially Reasonable Foreclosure

In the Motion to Dismiss, Lenders explained that New York law permits the parties to prescribe the standard that the secured party must adhere to for an UCC sale to be commercially reasonable.  *See* NY UCC § 9-603.  Guarantors ignore this binding authority in the Response and instead revert to arguing that New York's UCC sets the standard for a commercially reasonable foreclosure sale.  *See* Response at 4-11.  Guarantors are incorrect.

Here, Section 10(d) of the Pledge Agreement prescribes the standard that IMH Mezz Lender was required to comply with for the UCC Sale to be commercially reasonable.  Importantly, Guarantors fail to allege that the standards prescribed by Section 10(d) of the Pledge Agreement are "manifestly unreasonable" in violation of NY UCC § 9-603.  *See* Response at 4-11.  As such, this Court should ignore Guarantors' allegations that do not relate to IMH Mezz Lender's compliance with Section 10(d).

#### b. IMH Mezz Lender Provided Guarantors (and Others) Notice of the UCC Sale as Required Under the Pledge Agreement

---

5   Guarantors expressly "agree[d] to the provisions of the Loan Documents", which, by definition, includes the Pledge Agreement, when they executed the Mezz Guaranty.  *See* Mezz Guaranty at § 1.7.  Accordingly, Guarantors are bound by the terms of the Mezz Guaranty.

Guarantors, in their Response, argue that they have plausibly alleged that IMH Mezz Lender did not comply with Section 10(d)(iii) and (v) of the Pledge Agreement because IMH Mezz Lender did not publish notice of the postponed date of the UCC Sale. *See* Response at 10-11. Guarantors implicitly admit, however, that they did not attend the UCC Sale scheduled for April 11, 2019. *See id.* Guarantors further implicitly admit that IMH Mezz Lender provided notice of the UCC Sale of the initial Sale date. *See id.*; Counterclaims at ¶ 21.

As a matter of law, after IMH Mezz Lender provided notice of the April 11, 2019 initial Sale date, no further published notice was required. *See* NY UCC § 9-611(b) (requiring that "a secured party that disposes of collateral under Section 9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition"). IMH Mezz Lender, without question, provided notice of the initial Sale date of April 11, 2019. *See* Counterclaims at ¶ 21. Guarantors then provided notice of the postponement of the UCC Sale to anyone present on the dates on which the UCC Sale was scheduled pursuant to NY UCC 9-611. Guarantors fail to allege otherwise and instead retreat to their unfounded position that IMH Mezz Lender was required to provide a new published notice of the May 29, 2019 Sale date. *See* Response at 10. That allegation, however, is irrelevant. Had Guarantors attended the scheduled UCC Sale on April 11, 2019, Guarantors would have received notice that the UCC Sale was postponed. Guarantors, however, failed to bother to attend or otherwise seek to learn that the UCC Sale had been postponed. Guarantors' thus have failed to (and in fact cannot) plausibly allege that IMH Mezz Lender did not comply with Sections 10(d)(iii) and (v) of the Pledge Agreement.

        c.        <u>Section 10(d)(ii) of the Pledge Agreement Does Not Incorporate All of New York's UCC's Requirements for a Commercially Reasonable Foreclosure</u>

Next, Guarantors argue that Section 10(d)(ii) of the Pledge Agreement incorporates all of the requirements of New York's UCC for a commercially reasonable foreclosure.[6] It is well-

---

[6] Although not relevant at the pleading stage, IMH Mezz Lender in fact did comply with the requirements of New York's UCC for a commercially reasonable foreclosure to the extent applicable. A determination that IMH Mezz Lender complied with such requirements, however, is a fact-intensive inquiry

settled, however, that "[u]nder New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (citations and internal quotation marks omitted).

Guarantors' argument that Section 10(d)(ii) of the Pledge Agreement incorporates the entirety of New York's UCC's requirements for a commercially reasonable foreclosure would eviscerate the other provisions of Section 10(d) of the Pledge Agreement. Indeed, if Guarantors' position were correct (which it is not), there would be simply no purpose for Section 10(d) of the Pledge Agreement because New York's UCC would exclusively govern whether a foreclosure was commercially reasonable.[7] Guarantors' argument thus fails.

## III. CONCLUSION

For the foregoing reasons, Lenders respectfully request that this Court dismiss the Counterclaims with prejudice.

Dated:  Phoenix, Arizona

December 20, 2019

                                                  SNELL & WILMER L.L.P.

                                                  By: *Christopher H. Bayley*
                                                  Christopher H. Bayley (admitted *pro hac vice*)
                                                  James G. Florentine (admitted *pro hac vice*)
                                                  One Arizona Center
                                                  Phoenix, Arizona 85004
                                                  (602) 382-6000
                                                  cbayley@swlaw.com
                                                  jflorentine@swlaw.com

---

and thus inappropriate for determination at this stage of the case. *See Leigh Co. v. Bank of N.Y.*, 617 F. Supp. 147, 153. (S.D.N.Y. 1985) ("It is true that the determination of commercial reasonableness is usually a factual determination best made by the trier of fact.").

7    In contrast to Guarantors' flawed interpretation of Section 10(d)(ii), this Court should interpret Section 10(d)(ii) of the Pledge Agreement as requiring that IMH Mezz Lender comply with all other aspects of New York law in conducting the UCC Sale. Notably, Guarantors fail to make any allegations that IMH Mezz Lender did not comply with any other aspect of New York law. *See* Response at 4-11.

-and-

GIBSON, DUNN & CRUTCHER LLP
Matthew K. Kelsey
Jonathan Fortney
200 Park Avenue
New York, New York 10166
(212) 351-4000
mkelsey@gibsondunn.com
jfortney@gibsondunn.com

4850-3489-1695